UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ST. PAUL FIRE & MARINE INSURANCE CO.
as subrogor of KANAN FASHIONS, INC.                    Index No.: 07 cv 10593 (GBD)

                Plaintiff,

    - against -

AMERICAN AIRLINES, INC.,

               Defendant.
------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF AMERICAN AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT

 

Francis A. Montbach, Esq. (FAM 9631)
Jodi S. Tesser, Esq. (JST 6398)
Mound Cotton Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004

Attorneys for American Airlines, Inc.

## PRELIMINARY STATEMENT

Defendant American Airlines, Inc., ("American"), by and through its attorneys, Mound Cotton Wollan & Greengrass, respectfully submits this memorandum of law in support of its motion for summary judgment, pursuant to Rule 56 of the Federal Civil Judicial Procedure and Rules, seeking a dismissal of the Complaint filed by plaintiff St. Paul Fire & Marine Insurance Co. as subrogor of Kanan Fashions, Inc. ("St. Paul").

## FACTS

On or about November 18, 2005, Sri Lankan Airlines entered into a contract of carriage with Expolanka Freight Ltd. to transport 494 pieces of freight between Colombo, Sri Lanka and Chicago, Illinois via London, England pursuant to Sri Lankan air waybill number 603-2906-1292. (See Affirmation of Jodi S. Tesser, dated June 3, 2008 ("Tesser Aff."), Ex. 1). The first portion of that carriage between Sri Lanka and London's Heathrow Airport was performed by Sri Lankan Airlines. (See Tesser Aff., Ex. 1).[1] The remaining portion of the carriage between London and Chicago was performed by American.[2] (See Tesser Aff., Ex. 1).

Expolanka Freight Limited, the shipper on the Sri Lankan air waybill, issued house air waybill number EFL 000098220. (See Tesser Aff., Ex. 2). The shipper on the house air waybill is Gartex Industries Lanka (PPT) Ltd. and the consignee is Kanan Fashions, Inc. (See Tesser Aff., Ex. 2).

On May 16, 2007, St. Paul made payment to its insured, Kanan Fashions, Inc., in the amount of $33,303.91 in connection with the subject shipment. (See Tesser Aff., Ex. 3). In exchange for the payment, Kanan Fashions, Inc. executed a Subrogation Receipt, which

---

[1] On master air waybill number 603-2906-1292, the designation "UL" for the leg of the trip between Sri Lanka and Heathrow Airport in London indicates that that portion of the carriage was performed by Sri Lankan Airlines. (See Tesser Aff., Ex. 1).

[2] The designation of "AA" on the master air waybill issued by Sri Lankan Airlines refers to American Airlines. (See Tesser Aff., Ex. 1).

transferred any and all claims that Kanan Fashions may have with respect to the subject shipment to St. Paul. (See Tesser Aff., Ex. 3).

On or about November 27, 2007, plaintiff filed a Complaint against American alleging that the subject shipment sustained water damage in the amount of $43,303.91. (See Tesser Aff., Ex. 4). On or about January 24, 2008, American filed an Answer denying the allegations in the Complaint and asserting various affirmative defenses, including, *inter alia*, that plaintiff lacks standing to sue American. (See Tesser Aff., Ex. 5).

## ARGUMENT

## PLAINTIFF LACKS STANDING TO SUE AMERICAN

Plaintiff has no standing to sue American under the Warsaw Convention, as amended by The Hague Protocol, because it is neither the consignor nor the consignee named on the Sri Lankan air waybill.[3]

Article 30(3) of the Warsaw Convention, as amended by The Hague Protocol, sets forth who has standing to sue for loss, damage or delay in instances such as this of successive carriage of cargo. Article 30 states, in pertinent part:

> (1) In the case of transportation to be performed by various successive carriers and falling within the definition set out in the third paragraph of Article 1, each carrier who accepts passengers, baggage, or goods shall be subject to the rules set out in this convention, and shall be deemed to be one of the contracting parties to the contract of transportation insofar as the contract deals with that part of the transportation which is performed under his supervision.
>
> \* \* \*

---

[3] The United States ratified The Hague Protocol on September 15, 2003 and it came into affect on December 14, 2003. Sri Lanka acceded to The Hague Protocol on May 22, 1997. Accordingly, since both the United States and Sri Lanka have consented to The Hague Protocol, the Warsaw Convention as amended by The Hague Protocol governs the rights and liabilities of the parties in this action.

> (3)  As regards baggage or goods, the passenger or consignor shall have the right of action against the first carrier, and <u>the passenger or consignee who is entitled to delivery shall have a right of action against the last carrier</u>, and further, each may take action against the carrier who performed the transportation during which the destruction, loss, damage, or delay took place. The carriers shall be jointly and severally liable to the passenger or to the consignor or consignee. (Emphasis added)

<u>Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.</u>, 347 F.3d 448, 458-59 (2d Cir. 2003) interprets the language of Article 30 as it pertains to standing in instances of successive carriage. In interpreting Article 30(3), the Court explained:

> Despite Alitalia's implicit assertion that Article 30(3) governs all situations under the Warsaw Convention, any standing restrictions in that article are clearly intended to operate only in the specific instance of successive carriage by multiple carriers, as is evident from the margin note next to the section stating that it covers "transportation by successive carriage." *See* Warsaw Convention, art. 30. Beyond the obvious marker, the limited applicability of Article 30(3) is further demonstrated by the fact that both 30(1) and 30(2) deal directly with cases of carriage by "various successive carriers," suggesting a common thread among the three paragraphs. *See Id.* at art. 30(1)-(2). This common thread is supported by the wording of Article 30(3), which provides the "consignor shall have a right of action against the first carrier, and the . . . consignee who is entitled to delivery shall have a right of action against the last carrier." *Id.*, art. 30. Such language lays out a division of rights that would be unnecessary, and indeed nonsensical, in a case involving only one carrier. Thus, we conclude that Article 30(3) applies only in the case of successive carriage by more than one air carrier.

<u>Commercial Union</u>, 347 F.3d at 458-59; <u>see</u> also Georgette Miller, LIABILITY IN INTERNATIONAL AIR TRANSPORT, 250 (1977) (stating that Article 30(3) "is interesting in that it distributes the right of action against the various carriers between the consignor and the consignee, thus lifting any doubt that may arise in cases of successive carriage").

Courts and commentators alike have found that the language of Article 30(3) clearly provides that in cases of successive carriage, only the consignor or consignee has standing to maintain an action. <u>See generally</u> <u>Chan v. Korean Air Lines, Ltd.</u>, 490 U.S. 122, 134-35, 109 S.Ct. 1676 (1989) (explaining that where the language of an international treaty is clear, a court

3

must refrain from amending it because to do so would be to make, not construe, a treaty). Interpreting Article 30(3) to permit only the consignor and consignee to commence suit in instances of successive carriage is consistent with the drafters' intent inasmuch as they have acknowledged that it "serves solely to define who is the plaintiff and who is the defendant." See Robert C. Horner & Didier Legrez, SECOND INTERNATIONAL CONFERENCE ON PRIVATE AERONAUTICAL LAW MINUTES WARSAW, 1929, at pg. 132 (1975); see generally Commercial Union, 347 F.3d at 457 (explaining that when a treaty is susceptible to more than one interpretation, secondary sources, such as drafting documents, may be used to ascertain the appropriate meaning).

In this case, the subject shipment was transported by successive carriers inasmuch as it was transported on consecutive flights by two separate air carriers. Specifically, the first portion of the carriage between Sri Lanka and London's Heathrow Airport was performed by Sri Lankan Airlines. (See Tesser Aff., Ex. 1). The remaining portion of the carriage between London and Chicago was performed by American. (See Tesser Aff., Ex. 1). Accordingly, inasmuch as this is an instance of successive carriage and because plaintiff is neither the consignor nor the consignee on the Sri Lankan air waybill, nor has it derived any tights from the named consignee, Met Logistics, plaintiff lacks standing to commence suit against American under Article 30(3) of the Warsaw Convention, as amended by The Hague Protocol.

## CONCLUSION

For the reasons stated in this memorandum of law, and the accompanying Affirmation of Jodi S. Tesser, it is respectfully submitted that plaintiff's Complaint be dismissed on the ground that plaintiff lacks standing to sue American, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
       June 3, 2008

>Respectfully submitted,
>
>MOUND COTTON WOLLAN
>& GREENGRASS
>
>By: _____
>    Francis A. Montbach, Esq. (FAM 9631)
>    Jodi S. Tesser, Esq. (JST 6398)
>    One Battery Park Plaza
>    New York, New York 10004
>    (212) 804-4200