JAMES P. KRAUZLIS, ESQ.
BADIAK & WILL, LLP
Attorneys for Plaintiff
106 3rd Street
Mineola, New York 11501
(516) 877-2225
Our Ref. : 07-F-011-JK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

ST. PAUL FIRE AND MARINE INSURANCE COMPANY a/s/o Kanan Fashions, Inc.,

                        Plaintiff,

- against -

AMERICAN AIRLINES, INC.,

                        Defendant.

------------------------------------------------------------x

ECF CASE

07 Civ. 10593 (GBD)

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AMERICAN AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT

### Preliminary Statement

Plaintiff, St. Paul Fire & Marine Insurance Company ("St. Paul") as subrogee of Kanan Fashions, Inc., ("Kanan"), respectfully submits this memorandum of law in opposition to the motion of defendant American Airlines ("American") for summary judgment seeking an Order pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing the Complaint of St. Paul with prejudice, and granting Delta such other and further relief as this Court deems just and proper.

## Relevant Facts

The underlying action arises from a claim brought by St. Paul, as the subrogated underwriter of the consignee and owner of a shipment of 494 cartons of men's fleece jackets purchased by Kanan from the manufacturer and supplier in Biyagama, Sri Lanka, Gartex Industries Lanka (Pvt), Ltd. The shipment was purchased by Kanan on FOB Ex Factory terms, and Kanan retained the services of an international Freight Forwarder, Expolanka Freight Limited ("Expolanka") in order to arrange for the carriage of the shipment from Sri Lanka to Chicago, IL. Kanan also hired Met Logistics as its receiving agent and customs broker in order to clear customs and take delivery of the shipment when it arrived at Chicago's O'Hare International Airport. Subsequently, Expolanka booked the shipment with Sri Lanka Airlines for carriage from Colombo, Sri Lanka to London's Heathrow airport with American Airlines carrying the shipment from London to Chicago. In light of Kanan having hired Met Logistics to act as its receiving agent in Chicago and in order to facilitate delivery of the goods and clearance through customs, Expolanka designated Met Logistics, Kanan's agent, as the named consignee in the air waybill issued by Sri Lanka Airlines, which was issued on November 18, 2005 and numbered 603-2906-1292. Thereafter, Expolanka issued it's own "house" airwaybill, numbered EFL 000098220 and dated November 19, 2005, covering the same shipment. Expolanka issued an invoice to Kanan for the services Expolanka rendered as an international air freight forwarder, which was paid by Kanan. Met Logistics, acting as Kanan's receiving agent and customs broker, arranged for clearance of the shipment with U.S. Customs and hired a sub-contracted trucker, Screaming Eagle, to receive the goods when they arrived in Chicago.

Thereafter, the shipment arrived at Chicago's O'Hare International airport where the shipment was delivered by American to Met Logistics contracted trucker, Screaming Eagle, who reported to Met Logistics that the shipment was tendered by American in a wet and damaged condition. Met Logistics, in turn, reported on the damaged condition of the shipment to it's principal, Kanan, who thereafter made a claim against American for the damages as well as filing an insurance claim with it's cargo insurance company, St. Paul, in the amount of $43,303.91. St. Paul paid the claim in the amount $33,303.91, which was the original insured value of the shipment less a $10,000.00 deductible. Subsequently, St. Paul filed the instant action against American seeking payment of the full amount of the claim submitted by it's insured, Kanan, including the insurance deductible pursuant to an agreement and practice of St. Paul with it's assured to include the assured's deductible along with the amount paid by St. Paul under the subject policy.

The issue before this Honorable Court presented by American's motion is, quite simply, whether St. Paul, as subrogated underwriter of Kanan, the owner and consignee of the subject shipment, has standing to sue under the Warsaw Convention, as amended by The Hague Protocol. American's argument is that since St. Paul, the plaintiff, is not named in the air waybill under which American carried the shipment from London to Chicago (Met Logistics, Kanan's agent, is named as the consignee in the "master" air waybill), it has no standing to sue American under the applicable international conventions which American admits govern it's potential liability for damage to the subject shipment.

## ARGUMENT

## PLAINTIFF ST. PAUL HAS STANDING TO SUE AMERICAN AS THE SUBROGATED UNDERWRITER OF KANAN, THE ACTUAL OWNER AND PRINCIPAL OF THE NAMED CONSIGNEE IN THE MASTER AIR WAYBILL, MET LOGISTICS

American contends that under the Warsaw Convention, as amended by The Hague Protocol, Plaintiff St. Paul has no standing to sue as it is not named in the Sir Lankan air waybill as either the consignor or consignee, referring to Article 30(3) of the Warsaw Convention, as amended. For ready reference, Article 30(3) is set forth in pertinent part as follows:

> (3) As regards baggage or goods, the passenger or consignor shall have the right of action against the first carrier, and the passenger or consignee who is entitled to delivery shall have a right of action against the last carrier, and further, each may take action against the carrier who performed the transportation during which the destruction, loss, damage or delay took place. The carriers shall be jointly and severally liable to the passenger or to the consignor or consignee.

American refers the Court to the decision of Commercial Union Ins. Co. v. Alitatlia Airlines, S.p.A., 347 F.3d 448 (2nd Cir. 2003), which interpreted Article 30(3) on the issue of standing to sue. The conclusion of that court, as interpreted by American, as that Article 30(3) restricts the right of recovery against the delivering carrier, American, to the named consignee, which in the instant case is Met Logistics, because American was the last of successive carriers under the "master" air waybill. Based on American's interpretation, only Met Logistics, the named consignee, or Expolanka, the named shipper, in the "master" air waybill, have standing to sue American for the damage and loss to the subject shipment. This analysis, however, is premised

- 4 -

upon the erroneous conclusion that St. Paul, the named plaintiff, has not derived any rights from Met Logistics, the named consignee, nor Expolanka, the named consignor.

As noted in the accompanying affirmation by James P. Krauzlis, at the time of shipment and certainly at the time of delivery of the shipment by American in Chicago, Kanan, St. Paul's assured, owned the cargo, having purchased the shipment under FOB terms Ex Factory, Biyagama, Sri Lanka. Kanan retained Expolanka as an international air freight forwarder to arrange for the shipment from the factory, through the airport at Colombo, Sri Lanka, to Chicago's O'Hare International Airport. Throughout the time of carriage by air, the owner of the goods was Kanan, the Plaintiff's assured. Kanan also hired Met Logistics as it's receiving agent and customs broker to receive the cargo upon arrival in Chicago and to arrange for carriage from the airport to Kana's warehouse in Aurora, IL. Kanan instructed Expolanka to name Met Logistics as the consignee in the "master" air waybill, as Kanan's agent, to clearance of the shipment through customs and to allow Met Logistic's designated subcontracted trucker, Screaming Eagle, to receive the goods from American and make delivery to Kanan's warehouse in Aurora, IL. As such, Expolanka was acting as Kanan's agent at the airport of origin, Colombo, Sri Lanka, and Met Logistics was acting as Kanan's agent at the airport of destination, Chicago, IL.

St. Paul, the named plaintiff, is clearly subrogated to the rights of Kanan, having paid Kanan for the loss under the subject policy of cargo insurance, and stands in the shoes of Kanan with respect to this claim. As the court noted in <u>Commercial Union</u>, 347 F.3d at 457, St. Paul "as an insurer subrogee of [Kanan] accedes to all the rights that it's insured would have were it to have

brought the instant suit", citing American Bureau of Shipping v. Tencara Shipyard S.p.A., 170 F.3d 349, 353 (2nd Cir. 1999).

The issue then becomes whether Kanan, as owner of the goods, whose rights are acceded to the Plaintiff, St. Paul, it's subrogated underwriter, has any standing to sue under the "master" air waybill against American. The court's discussion and holding in Commercial Union is, again, instructive in resolving this issue.

Although dealing with the issue of standing to sue beyond the context of successive carriage, the decision and analysis of Commercial Union also dealt with other articles of the Warsaw Convention that deal with standing to sue in cases of damage to cargo. In discussing Article 13, which confers upon the named consignee the right to require the carrier to deliver the air waybill and the goods, and if the goods do not arrive or the carrier admits liability for their loss, the consignee may enforce the rights flowing from the contract of carriage, the Commercial Union court noted Courts have assumed that the named consignor and consignee, as the parties with rights over the goods, were the parties in interest entitled to sue under the Convention. Commercial Union, 347 F.3d at 459, citing Brink's Ltd. v. South African Airways, 93 F.3d 1002, 1025 (2nd Cir. 1996); Lufthansa German Airlines v. American Airlines, Inc., 797 F. Supp. 446, 452-53 (D.V.I. 1992); Parke, Davis & Co. v. British Overseas Airways Corp., 11 Misc. 2d 811, 812-13 (City Court of N.Y. 1958). Referring to Article 15, the Commercial Union court further noted that Articles 12-14, where the conferral of standing is rooted, discuss only the rights of parties to exercise control over goods in transit, and do not speak to standing, let alone limit it. 347 F.3d at 460. Article 15 provides, in pertinent part:

> Articles 12, 13, and 14 do not affect either the relations of the consignor and the consignee with each other or the relations of third parties whose rights are derived either from the consignor or the consignee.

As the court in Commercial Union notes, Article 15 clearly and plainly suggests that any legal relationships with third parties vis-a-vis consignors and consignees under local law are not altered by those provisions of the Warsaw Convention that define consignees or consignors rights. Id. The court concluded "hence, a party not named in a contract for carriage who under local law would have a right to sue through a legal relationship with the consignor would likewise have such a right under the Warsaw Convention". Id.

The Commercial Union court also noted, in a footnote discussing the recent amendments to the Warsaw Convention, that the amendments further support the proposition that third parties' rights to bring suit in cargo cases where not meant to be compromised in the original Convention, referring to Article 24(2) of the Montreal Protocol No. 4, which became effective in the United States on March 4, 1999. Commercial Union, 347 F.3d at 460, footnote 2.

Defendant American implicitly admits and recognizes this conclusion when it states in it's Memorandum of Law in Support :

> "Accordingly, inasmuch as this is an instance of successive carriage and because plaintiff is neither the consignor nor the consignee on the Sri Lankan air waybill, nor has it derived any tights [sic] from the named consignee, Met Logistics, plaintiff lacks standing to commence suit against American under Article 30(3) of the Warsaw Convention, as amended by The Hague Protocol." Memorandum of Law in Support of American Airlines, Inc.'s Motion for Summary Judgment, page 4.

It is interesting to note that in the case of Lufthansa German Airlines v. American Airlines, 797 F. Supp. at 453, also cited in the Commercial Union case, the defendant American,

who was also a defendant in the cited case, also argued that the named plaintiff, Lufthansa, had no standing to sue American since Lufthansa, who was the originating carrier, was not named as a consignor or consignee under the air waybill issued for the carriage where American was, again, the successive carrier. The Lufthansa court disagreed with American's argument, stating:

> While American Airlines is correct that Articles 12 and 13 of the Convention generally limit the right to sue to the consignor or consignee, these provisions, when read in conjunction with Articles 14 and 15, have been construed broadly to permit parties other than the named consignee or consignor to maintain an action under the Convention. See generally Highlands Insurance Company v. Trinidad and Tobago (BWIA International) Airway Corporation, 739 F.2d 536 (11th Cir.1986) (Action brought by subrogee of cargo shipper); B.R.I. Coverage Corp., v. Air Canada, 725 F.Supp. 133 (E.D.N.Y.1989) (an undisclosed principal's successor-in-interest has standing to sue under the Convention because the plaintiff's rights are derived from undisclosed principal who had standing) (citing Leon Bernstein Commercial Corp., v. Pan Am. World Airways, 72 A.D.2d 707, 708, 421 N.Y.S.2d 587, 589 (1st Dep't 1979)). These cases are authority for the proposition that if it can be established that the plaintiff's right is "derived either from the consignor or from the consignee," and the "defendant will not be making any liability payment to the wrong party nor will the plaintiff be unjustly enriched by any award or damages," then the Convention must not be narrowly construed if to do so would defeat the rights of the plaintiff. Plaintiff's proffer establishes that it has been subrogated to the rights of the consignor Malca-Amit by virtue of the payment to Malca-Amit by the insurer Delvag. It is clear that under Article 15 of the Convention that the plaintiff's rights are "derived ... from the consignor." Therefore, this court finds that Lufthansa has standing as a subrogee to maintain this action.

Thus, in as much as Kanan, the named plaintiff's assured, has standing to sue, having derived rights from both the consignor and consignee, being the undisclosed principal of each who were acting as Kanan's agent, the named plaintiff, having been subrogated to the rights of Kanan, having made payment to it's assured under it's cargo insurance policy, is the real party in interest with respect to the subject loss and has standing to sue American as the delivering carrier under the "master" air waybill under the Warsaw Convention, as amended by The Hague Convention.

## CONCLUSION

For the foregoing reasons, Plaintiff, St. Paul Fire & Marine Ins. Co., is the real party in interest and has standing to sue the Defendant, American Airlines, Inc., by reason of it having the same rights as it's assured, Kanan Fashions, Inc., who was the undisclosed principal of both the named consignor, Expolanka Freight Limited, and the named Consignee, Met Logistics, under the "master" air waybill. Accordingly, American's motion for summary judgment should be denied in its entirely.

Dated: Mineola, New York
      June 27, 2008

Respectfully submitted,

_____
James P. Krauzlis (JK-4972)
BADIAK & WILL, LLP
Attorneys for Plaintiff, St. Paul Fire & Marine Insurance Company
106 3rd Street
Mineola, New York 11501
(516) 877-2225

Index No.: 07 CV 10593 (GBD)

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                       )SS.:
COUNTY OF NASSAU       )

**I, Luz M. Webb,** being duly sworn, deposes and says:

I am not a party to the within action, am over 18 years of age and reside c/o Badiak & Will, LLP, 106 3rd Street, Mineola, New York 11501-4404.  On June 27, 2008  I served the within MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AMERICAN AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT on:

Attn: Francis A. Montbach
MOUND COTTON WOLLAN & GREENGRASS
One Battery Park Plaza
New York, New York 10004

by depositing a true copy thereof enclosed in a post-paid wrapper in an official depository under the exclusive care and custody of the United States Postal Service within New York State.

_____
LUZ M. WEBB

Sworn to before me this
27th day of June, 2008

_____
NOTARY PUBLIC

JAMES P. KRAUZLIS
Notary Public, State of New York
No. 02KR5051531
Qualified in Suffolk County
Commission Expires Nov. 8, _____

1/16/2010