UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ST. PAUL FIRE & MARINE INSURANCE CO.
a/s/o of KANAN FASHIONS, INC.

              Plaintiff,

- against-

AMERICAN AIRLINES, INC.,

             Defendant.
------------------------------------------------------------X

Index No.: 07 cv 10593 (GBD)

**AFFIRMATION OF
JODI S. TESSER**

STATE OF NEW YORK   )
                               )ss
COUNTY OF NEW YORK )

     **JODI S. TESSER**, an attorney duly admitted to the practice of law in New York, affirms under the penalty of perjury:

    1.    I am an attorney at the law firm of Mound Cotton Wollan & Greengrass, attorneys for American Airlines, Inc. ("American"). I am fully familiar with the facts of this case and with the prior proceedings had herein.

    2.    This affirmation is submitted in further support of American's motion for summary judgment, which seeks a dismissal of the Complaint of St. Paul & Marine Insurance Co. as subrogee of Kanan Fashions, Inc.

    3.    Annexed hereto is the case styled <u>Bennett Importing v. Continental Airlines, Inc.</u>, No. 87 CV 29, 1998 WL 34031697 (D. Mass. Dec. 27, 1998).

                                                                               */s/ Jodi S. Tesser*
                                                                             Jodi S. Tesser (JST 6398)

Westlaw.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 1998 WL 34031697 (D.Mass.)  
(Cite as: Not Reported in F.Supp.2d, 1998 WL 34031697 (D.Mass.))

Page 1

CBennett Importing v. Continental Airlines  
D.Mass.,1998.  
Only the Westlaw citation is currently available.  
United States District Court,D. Massachusetts.  
BENNETT IMPORTING Company, Plaintiff  
v.  
CONTINENTAL AIRLINES, INC., Defendant  
No. Civ.A. NO. 87 CV 29.

Dec. 27, 1998.

Sullivan and Lynch, Boston, MA., for Bennett Importing Com.  
Ethan Warren, Needham & Warren, Boston, MA., for Continental Airlines, Inc.  
KEETON, J.

*1 This case was tried before the court without a jury on November 23, 1988. The parties agreed to a bifurcated trial, with Phase I limited to liability. The parties further agreed, with the court's approval, that all direct testimony would be received by affidavit rather than oral examination. No oral examination was conducted for the purpose of cross-examination. This Opinion recites the court's findings and conclusions on all issues material to disposition in this Phase I trial.

I.

Plaintiff, Bennett Importing Company ("Bennett") asserts two counts against defendant Continental Airlines Incorporated ("Continental") for failing to deliver, in a timely fashion, a shipment of goods under Air Waybill No. 005-2293-0574 to plaintiff or plaintiff's agents. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332.

The essential facts are not in dispute.

On July 13, 1987, Continental received in Guadalajara, Mexico from Huaramex, S.A. as consignor, 21 pieces of freight labelled "leather shoes" for delivery to John F. Kennedy International Airport ("JFK") in New York. The consignee is listed on the Air Waybill as "Terra Is Incorporated" ("Terra"). This shipment arrived in New York on July 15, 1987, and was placed in Continental's bonded cargo facility. On July 16, 1987, a carrier's certificate to the Bureau of Customs issued indicating Terra as consignee, Continental as the carrier, Alto Customhouse Brokers, Inc. ("Alto") as the "broker" and Camel Trucking as the trucking company authorized to pickup the goods. Bennett is not listed on this document. Plaintiff's Exhibit 1.

On July 20, 1987, United States Customs issued an authorization for release of the goods to Alto. Plaintiff's Exhibit 6. Bennett is listed on this document, although it is unclear from the copy received in evidence whether Bennett is listed on the document as the "consignee." However, plaintiff agreed at trial that this document was never forwarded to Continental.

On July 22, 1987, Continental was paid in full for the shipment.

On July 24, 1987, Alto mailed a preliminary claim for "damage/storage" of the goods to Continental. The claim indicated that the shipment was missing. Plaintiff's Exhibit 3. Bennett is listed on the document as a party to whom acknowledgement of "receipt of this claim" should be given. The letter also states that "[a] formal claim will be submitted by the importer when the loss has been fully ascertained."Plaintiff's Exhibit 3.

On July 30, 1987, Bennett sent a formal claim for loss to Continental.

On August 1, 1987 Camel Trucking took possession of the shipment from Continental.

On August 8, 1987, Continental received the claim for loss dated July 30, 1987. In this claim, Bennett identified damages of $ 23,397 .25 which included the entire value of the missing shipment plus the entire value of a shipment that was received but could not allegedly be used without the missing shipment. No damages were requested due to "delay."

*2 No other claim for loss was ever made on Continental. On November 10, 1987, Bennett filed suit in state court for lose due to delay of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 1998 WL 34031697 (D.Mass.)
(Cite as: Not Reported in F.Supp.2d, 1998 WL 34031697 (D.Mass.))

shipment, claiming damages over $ 80,000.00. Continental removed the case to this court.

II.

The dispute in this case is essentially one for breach of contract, or breach of a carrier's duty to deliver goods on time. However, because the goods were shipped internationally, from Mexico into the United States, any claim for loss or injury to the goods is subject to the provisions of the Warsaw Convention if the dispute arises out of actions that took place during the "transportation by air." *49 U.S.C. § 1502, Article 18.*

Article 18 defines "transportation by air" as "the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft...." Defendant's Second Affirmative Defense-that Bennett lacks standing to sue because it is not named on the face of the Air Waybill-is premised on a ruling that the provisions of the Warsaw Convention are applicable to this dispute. This ruling is in turn based on a finding that the damage in this case occurred during the period of "transportation by air."

Courts that have interpreted and applied Article 18 have held that whether the loss occurred during transportation by air is determined by the amount of control the carrier exercised over the goods, the place of the loss, and whether the loss occurred during a period of incidental and temporary storage of goods. See *Royal Ins. v. Amerford Air Cargo, 654 F.Supp. 679 (S.D.N.Y.1987); Berman v. Trans World Airlines, 101 Misc.2d 511, 421 N.Y.S.2d 291, 193 (1979).*

At trial, the parties submitted affidavits and presented evidence bearing on the issue of whether Continental retained control of the goods at the time the loss occurred. In its supplemental affidavit on behalf of Continental, defendant states that when cargo arrives at JFK.

it is immediately placed in storage in Continental's facilities at the airport. The cargo remains there until delivered to the consignee or local transportation company. All customs inspections are done at Continental's facilities. The cargo is not placed in the custody of the consignee or its agent for customs purposes.

Thus, defendant argues that the period of transportation by air began when the goods were placed with the carrier in Mexico, and continued until the consignee or a designated trucking company picked up the goods from Continental at JFK.

Pursuant to Fed.R.Civ.P. 52, plaintiff proposed four findings of fact, three of which relate to when the period of transportation by air was terminated. Plaintiff's first proposed finding on this issue is that upon placement of the cargo in the customs bonded cargo facility of Continental, the period of transportation by air terminated. Such a finding, however, would be contrary to the weight of authority on this issue and inconsistent with the plain meaning of Article 18 in which the relevant criterion is whether the carrier is in charge of the goods.

*3 Continental had a duty to place the goods in its bonded facility upon arrival at JFK. It could not have completed performance of its obligation as an air carrier without storing the goods for some time period after arrival at JFK. There is no indication either in the documentary evidence or affidavit testimony that Continental forfeited any control over the cargo when it was placed in the bonded facility. Accordingly, I cannot accept plaintiff's proposed finding that the transportation by air terminated on July 16, 1987.

Plaintiff's second proposed finding on this issue is that the relevant period terminated upon issuance of the carrier's certificate. Issuance of the carrier's certificate, however, in no way changes the place of the goods or control over the goods. Issuance of the carrier's certificate is standard procedure. It allows the customs service to begin inspection of the goods. Although plaintiff may be correct that the issuance of the carrier's certificate transferred title over the goods from Continental to Terra, no evidence was presented to support a finding that issuance of the carrier's certificate altered the degree of control Continental exercised over the goods. Thus, I cannot accept plaintiff's proposed finding that the period of transportation by air terminated on July 16, 1987.

Plaintiff's final proposed finding on this issue is that the period of transportation by air ceased upon authorization by the customs service that the goods could be released. No evidence was presented,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 34031697 (D.Mass.)
(Cite as: Not Reported in F.Supp.2d, 1998 WL 34031697 (D.Mass.))

Page 3

however, to support a finding that the authorization divested Continental of control over the goods, or that it altered, in any way, the placement of or custody over the goods.

The Warsaw Convention includes provisions for damages in the event of loss, damage or delay. In this case, plaintiff's claim is for failure to deliver on time and thus is a claim for damages due to delay. Implicit in a provision that awards damages for delay is the assumption that the Warsaw Convention would be applicable in cases in which the cargo was not delivered on time because the cargo was temporarily lost or in transit, but where the receiving party had taken all necessary steps to accept the cargo. Plaintiff has presented no evidence to support a ruling that under circumstances in which the goods are temporarily lost but are nevertheless retained by the carrier, the Warsaw Convention would no longer be applicable. Accordingly I conclude that the period of transportation by air includes the time during which the goods were retained by Continental after importation into the United States, and before release to Camel Trucking. Storage of the goods for the limited purpose of obtaining release from customs, and then delivering them to the authorized agent, is incidental to the contract to transport the goods from Mexico into the United States. Therefore, because I find that the loss occurred during this period of incidental storage, I conclude that the provisions of the Warsaw Convention are applicable to this dispute. Plaintiff's state law claims therefore, can only be maintained subject to the conditions and limits outlined in the Warsaw Convention. *In re Mexico City Aircrash, 708 F.2d 400, 414 n. 25 (9th Cir.1983).*

III.

*4 Article 14 of the Warsaw Convention states that "the consignor and the consignee can respectively enforce all the rights given to them by articles 12 and 13, each in his own name whether he is acting in his own interest or in the interest of another...." Defendant contends that pursuant to this provision, the only entities or persons with standing to sue for damage, loss, or delay that occurred during the period of transportation by air are those entities or persons listed on the face of the Air Waybill either as consignor or consignee.

The Ninth Circuit recently addressed this issue in *Johnson v. American Airlines, Inc., 834 F.2d 721, 724-25 (9th Cir.1987).* In Johnson the court explicitly held that "only the consignor and consignee to the air waybill have standing to sue under the Convention."Id. However, the court explicitly declined to reach the question of whether the plaintiffs would have standing to sue based on "an agency or third-party beneficiary status."Id.

In *Leon Bernstein Commercial Corp. v. Pan American World Airways, 72 A.D.2d 707, 421 N.Y.S.2d 587* (1979 1st Dept), the court held that an alleged undisclosed principal of the consignor named in the air waybill could have standing to sue the carrier if it could be established upon trial that the plaintiff was the undisclosed principal and had title to the goods at the time of the loss. Thus, the plaintiff had the burden of proving that it was the undisclosed principal of the consignor and therefore could sue the carrier.

Under both Massachusetts and New York law an undisclosed principal may sue, or be sued for damages arising out of a contract entered into by the agent and a third party. However, under both Massachusetts and New York law, the burden of proving the existence of the agency relationship is on the party seeking to establish that an agency relationship exists. E.g., *Taub v. Colonial Coated Textile Corp., 54 A.D.2d 660, 387 N.Y.S.2d 869, 870* (1976 1st Dept); Armen Z. *Nalbandian v. Hanson Restaurant & Lounge, Inc., 369 Mass. 150, 338 N.E.2d 335 (1975)* (holding that in order to sue an undisclosed principal it is well-settled that the plaintiff had to prove the existence of the agency relationship).

Throughout plaintiff's submissions are references to both Terra and Alto as "agents" for Bennett. However, in plaintiff's statement of facts in its Brief in Opposition to Motion for Summary Judgment (Docket No. 11), plaintiff refers to Terra as the consignor's freight forwarder. Alto, on the other hand is referred to as plaintiff's "agent." Plaintiff's mere allegation that Terra is an agent of Bennett cannot support a ruling that Bennett was an undisclosed principal entitled to sue on the contract (Air Waybill). If it is Plaintiff's contention that Bennett is the undisclosed principal of Terra (the named consignee on the Air Waybill), it was incumbent upon plaintiff

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-10593-GBD  Document 15  Filed 07/03/2008  Page 5 of 8

Not Reported in F.Supp.2d                                                                                                  Page 4
Not Reported in F.Supp.2d, 1998 WL 34031697 (D.Mass.)
(Cite as: Not Reported in F.Supp.2d, 1998 WL 34031697 (D.Mass.))

to provide the court with evidence of the alleged agency relationship at trial.

*5 It is well-settled that a person who contracts to perform an act for another, but who is not a fiduciary for the "other," is an independent contractor, not an agent. See RESTATEMENT (SECOND) AGENCY § 14 comment o (1958). The distinction between an agent and an independent contractor is not a mere formality. The agency relationship carries with it duties, rights, and implications for third parties. For example, a principal may be subject to liability upon contracts made by an agent acting within the agent's authority. Thus, if Terra had violated the contract with Continental, Continental would have been entitled to sue Bennett as an undisclosed principal.

Plaintiff, however, did not produce evidence sufficient to establish an agency relationship between itself and Terra. No evidence was produced, for example, with regard to how Terra was paid, what services Terra performed, or how Terra transferred title over the goods to Bennett. Moreover, plaintiff did not produce any affidavits from either Terra or Alto stating that they were acting as "agents" for Bennett, or that Bennett was suing on their behalf. In addition, Bennett has not made a claim that it was the intended beneficiary of the contract between Huamarex, S.A. and Terra, or that it has rights that derive from the contract between Huamarex, S.A. and Terra.

Plaintiff's evidence bearing on whether an agency relationship existed is limited to the Affidavit on Behalf of Bennett Importing Company in which plaintiff states that "Bennett's agent, Terra Is Incorporated, a freight forwarder, coordinated the transportation of the merchandise from Guadalajara, Mexico to New York," the fact that Bennett eventually received the goods shipped, and that Bennett and Huamarex, S.A. had entered into a contract for the sale of the goods. Although this evidence supports a finding that Bennett was the party to whom the goods were eventually to be delivered, it does not support a finding that Terra was Bennett's agent. Thus, I reject plaintiff's first proposed finding of fact, to wit: "Bennett Importing Company is the consignee of the import shipment."

Neither is there documentary evidence or affidavit testimony before the court that purports to prove that continental knew or should have known that Terra was acting as Bennett's agent. Plaintiff admitted at trial that although the document authorizing release from customs included Bennett's name, that document was never forwarded to Continental. It is also undisputed that the first time Bennett made any claim for loss on Continental was its July 30, 1987 letter to Continental. Although Alto states in its July 24 letter that the "importer" would present a formal claim for loss, and included Bennett's name as a party to whom recognition of the claim should be sent, there was no indication in that letter that Terra was Bennett's agent.

Although plaintiff produced evidence that for a previous and related shipment Bennett was named on the Air Waybill as consignee, this evidence fails to support a finding that Continental knew that Terra was acting as Bennett's agent. The previous Air Waybill does not reference Terra, but rather includes Alto's name as the entity to be contacted when the goods arrived at JFK. In addition, Plaintiff produced no evidence of other prior dealings that could establish that Continental knew or should have known that Terra was acting as Bennett's agent. Therefore, I cannot find that Bennett has standing to sue based on Continental's knowledge that Terra was an agent for Bennett.

IV.

*6 Even if I had concluded in Part III that plaintiff does have standing to sue, either as a third party beneficiary or on an agency theory, I conclude that plaintiff is barred from suing because Bennett failed to comply with the applicable notice provisions of the Warsaw Convention.

Article 26 of the Warsaw Convention requires a complainant alleging loss due to delay to notify the carrier in writing "at the latest within 14 days from the date on which the baggage or goods have been placed at his disposal."*49 U.S.C. § 1502, Article 26(2).*Article 26(4) states that if a complainant fails to comply with subparagraph 2, "no action shall lie against the carrier, save in the case of fraud on his part."Defendant argues that Bennett failed to comply with the 14 day notice requirement, despite Bennett's latter to Continental dated July 30, 1987 in which Bennett states "please consider this our formal claim for loss of the entire shipment ... please acknowledge

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

receipt of this claim and please expedite settlement of same."Plaintiff's Exhibit 4. Defendant does not contend that Bennett never notified Continental of loss of the entire shipment. Rather, defendant argues that because the entire shipment was delivered on August 1, 1988, and because the letter when received by Continental on August 8, 1988 claimed damages for loss rather than for delay, Bennett failed to comply with its obligation to notify the carrier of any damages due to delay.

Defendant argues that the notice provisions can be waived only in the exceptional case where the damage to the cargo was so obvious that notification would have been superfluous. E.g., _Dalton v. Delta Airlines, Inc., 570 F.2d 1244 (5th Cir.1978)_ (holding that where the goods shipped were live greyhounds, and where the greyhounds when delivered were dead, no notification of the damage to the carrier was required). In this case, however, the question is not whether Bennett is entitled to be excepted from the notice requirements, but rather, whether Bennett's letter of July 30 and/or the letter from Alto on July 24, satisfy the notice requirements.

Continental delivered the cargo to Camel Trucking on August 1, 1987. It received the letter from Bennett claiming damages for loss of the entire shipment on August 8, 1987. The letter cited "loss" because at that time, on July 30, no goods were delivered. Consequently, when the letter pre-dating the delivery date was received on August 8, 1987, it was reasonable for Continental to assume that there was no damage from the delay. If the letter to Continental had been dated after the goods were delivered, then it would be reasonable to find that Continental was on notice that Bennett had a claim against it. However, because the letter pre-dated delivery, and because Continental had cured the loss by the time it received the letter, it was reasonable for Continental to ignore the claim for loss, take no action toward settlement, and fail to investigate whether Continental was at fault for the loss. Thus, although Bennett's July 30 letter asks Continental to expedite settlement of the claim, it does so referencing only the loss of the entire shipment. Once this loss was cured, it was incumbent upon Bennett, pursuant to Article 26(2) to notify Continental of any damages due to delay. This Bennett failed to do. Because the Warsaw Convention is explicit that compliance with the notice provisions is a prerequisite to suit, I must rule that Bennett is barred from suing Continental for damages due to delay.

V.

*7 For the reasons stated in Parts III and IV of this Memorandum, I conclude that under Articles 14 and 26(4) of the Warsaw Convention, judgment must be for the defendant.

Final judgment for defendant on all counts, with costs, will be entered forthwith.

Robert E. Keeton

United States District Judge

Final Judgment

December 27, 1988

For the reasons stated in the Opinion of this date, it is ORDERED:

Judgment for defendant with costs.

Robert E. Keeton

United States District Judge

D.Mass.,1998.
Bennett Importing v. Continental Airlines
Not Reported in F.Supp.2d, 1998 WL 34031697 (D.Mass.)

END OF DOCUMENT

UNITED STATES DISTRICT COURT)

SOUTHERN DISTRICT OF NEW YORK)

## **AFFIDAVIT OF SERVICE**

Lynn Cappiello, being duly sworn, deposes and says:

That deponent is not a party to this action, is over the age of 18 years and resides in Nassau County, New York.

That on July 2, 2008, deponent served the within **AFFIRMATION OF JODI S. TESSER AND REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF AMERICAN AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT** upon:

James P. Krauzlis, Esq.
Badiak & Will, LLP
106 3rd Street
Mineola, New York 11501-4404

the addresses designated by said entities for that purpose by depositing the same enclosed in a first-class postpaid properly addressed wrapper to said entities at the above addresses in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

_____
Lynn Cappiello

Sworn to before me this 2nd
day of July, 2008

_____
NOTARY PUBLIC

CATHERINE RITZER
Notary Public, State of New York
No. 30-4744978
Qualified in Nassau County
Commission Expires September 30, 2009

| UNITED STATES DISTRICT COURT | Index No. 07 cv 10593 (GBD) |
| SOUTHERN DISTRICT OF NEW YORK | |

ST. PAUL FIRE & MARINE INSURANCE CO.
as subrogor of KANAN FASHIONS, INC.

   Plaintiff,

- against-

AMERICAN AIRLINES, INC.,

   Defendant.
-------------------------------------------------------------X

## AFFIRMATION OF JODI S. TESSER

MOUND COTTON WOLLAN & GREENGRASS
*Attorneys for*

*Office and Post Office Address, Telephone*
ONE BATTERY PARK PLAZA
NEW YORK, NY 10004
(212) 804-4200

To:

Attorney(s) for

Service of a copy of the within is hereby admitted.

Dated:_____ 20_____