UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ST. PAUL FIRE & MARINE INSURANCE CO.
a/s/o of KANAN FASHIONS, INC.                    Index No.: 07 cv 10593 (GBD)

           Plaintiff,

   - against -

AMERICAN AIRLINES, INC.,

           Defendant.
------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF AMERICAN AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT

Francis A. Montbach, Esq. (FAM 9631)
Jodi S. Tesser, Esq. (JST 6398)
Mound Cotton Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004

Attorneys for American Airlines, Inc.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

FACTS ....................................................................................................................................1

ARGUMENT..........................................................................................................................1

PLAINTIFF LACKS STANDING TO SUE AMERICAN...................................................1

A.    Neither The Plaintiff Nor Its Insured Are Designated As the Consignor or
      Consignee As Required By Article 30(3) of The Warsaw Convention..................1

B.    Plaintiff Has Failed to Provide Proof in Admissible Form That, As Subrogee of
      Kanan, It Has Derived Any Rights From the Consignor or The Consignee.........5

CONCLUSION......................................................................................................................10

i

# TABLE OF AUTHORITIES

## CASES

Bennett Importing v. Continental Airlines, Inc., No. 87 CV 29,
1998 WL 34031697 (D. Mass. Dec. 27, 1998) ...............................................5, 6, 7, 8, 9

Brink's Ltd. v. South African Airways, 93 F.3d 1022 (2d Cir. 1996)...............…..………...4, 5

Chan v. Korean Air Lines, Ltd., 490 U.S. 122, 109 S.Ct. 1676 (1989)...................…..……….2, 5

Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A., 347 F.3d 448 (2d Cir. 2003)..1, 2, 3, 4, 5

Leon Bernstein Commercial Corp. v. Pan Am. World Airways, 72 A.D.2d 707,
421 N.Y.S.2d 587 (1st Dep't 1979)...................................................................…..……5

Lufthansa German Airlines v. American Airlines, 797 F. Supp. 446 (D. V.I. 1992)................…...5

Parke, Davis & Co. v. British Overseas Airways Corp., 11 Misc.2d 811,
170 N.Y.S.2d 385 (City  Ct. of N.Y. 1958) .....................................................…....9

Zuckerman v. City of New York, 49 N.Y.2d 557, 427 N.Y.S.2d 595 (1980)...................…..…..9

## TREATIES AND SECONDARY SOURCES

49 Stat. 3000 at Articles 12, 13, 14, & 15..............................................................3, 4

Georgette Miller, LIABILITY IN INTERNATIONAL AIR TRANSPORT, 250 (1977) .......................2

Robert C. Horner & Didier Legrez, SECOND INTERNATIONAL CONFERENCE ON PRIVATE AERONAUTICAL LAW MINUTES WARSAW, 1929, at pg. 132 (1975)...............................…..2, 3

## PRELIMINARY STATEMENT

Defendant American Airlines, Inc. ("American"), by and through its attorneys, Mound Cotton Wollan & Greengrass, respectfully submits this reply memorandum of law in response to the opposition of plaintiff St. Paul Fire & Marine Insurance Co. as subrogee of Kanan Fashions, Inc., and in further support of its motion for summary judgment, pursuant to Rule 56 of the Federal Civil Judicial Procedure and Rules, seeking a dismissal of the Complaint.[1]

## FACTS

The relevant facts are set forth in American's initial moving papers and, in the interest of brevity, are not repeated herein.

## ARGUMENT

### PLAINTIFF LACKS STANDING TO SUE AMERICAN

A.    **Neither The Plaintiff Nor Its Insured Are Designated As the Consignor or Consignee As Required By Article 30(3) of The Warsaw Convention**

Plaintiff's argument that St. Paul, as subrogee of Kanan Fashions, Inc. ("Kanan") has standing to sue inasmuch as it derived such rights from both the consignor, Expolanka Freight, Ltd. ("Expolanka") and the consignee, Met Logistics, listed on Sri Lanka air waybill number 603-2906-1292 as their undisclosed principal is not only unsupported by the evidence in the record, but is just plain wrong under Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A., 347 F.3d 448, 458-59 (2d Cir. 2003). Plaintiff either refuses to recognize or simply fails to understand that Article 30(3) of the Warsaw Convention bestows standing only upon the

---

[1] Plaintiff's "Rule 56.1 Statement of Contested (sic) Facts" does not comply with Local Rule 56.1(b), because it does not include a correspondingly numbered paragraph responding to each numbered paragraph in American's Rule 56.1 statement. Therefore, pursuant to Rule 56.1(c), paragraphs 1, 3, 4, 5, 6, 8, and 12 of American's Rule 56.1 statement are deemed admitted. Furthermore, as will be more fully discussed in this reply memorandum of law, plaintiff's Rule 56.1 Statement of Contested (sic) Facts" at ¶¶ 9, 14, 15, and 16 discusses facts attested to by plaintiff's counsel in his affirmation without any reference to any evidentiary support in admissible form, such as an affidavit from his client.

consignor and the consignee regardless of whether plaintiff, or its insured Kanan, are also the real parties in interest.

In Commercial Union, 347 F.3d at 458-59, the court specifically found that in instances of successive carriage, such as in this case, Article 30(3) governs which parties have standing to sue:

> [A]ny standing restrictions in that article are clearly intended to operate in the specific instance of successive carriage by multiple carriers, as is evident from the margin note next to the section stating that it covers "transportation by successive carriage." *See* Warsaw Convention, art. 30. Beyond the obvious marker, the limited applicability of Article 30(3) is further demonstrated by the fact that both 30(1) and 30(2) deal directly with cases of carriage by "various successive carriers," suggesting a common thread among the three paragraphs. *See Id.* at art. 30(1)-(2). This common thread is supported by the wording of Article 30(3), which provides the "consignor shall have a right of action against the first carrier, and the . . . consignee who is entitled to delivery shall have a right of action against the last carrier." *Id.*, art. 30. Such language lays out a division of rights that would be unnecessary, and indeed nonsensical, in a case involving only one carrier. Thus, we conclude that Article 30(3) applies only in the case of successive carriage by more than one carrier.

Inasmuch as this case involves successive carriage, Article 30(3) governs -- unambiguously restricting standing to sue to either the consignor or the consignee on the air waybill. See generally Chan v. Korean Air Lines, Ltd., 490 U.S. 122, 134-35, 109 S.Ct. 1676 (1989) (explaining that where the language of an international treaty is clear, a court must refrain from amending it because to do so would be to make, not construe, a treaty); see also Georgette Miller, LIABILITY IN INTERNATIONAL AIR TRANSPORT, 250 (1977) (stating that Article 30(3) "is interesting in that it distributes the right of action against the various carriers between the consignor and the consignee, thus lifting any doubt that may arise in cases of successive carriage"); Robert C. Horner & Didier Legrez, SECOND INTERNATIONAL CONFERENCE ON PRIVATE AERONAUTICAL LAW MINUTES WARSAW, 1929, at pg. 132 (1975) (Interpreting Article 30(3) to permit only the consignor and consignee to commence suit in instances of successive

2

carriage is consistent with the drafters intent inasmuch as they have acknowledged that it "serves solely to define who is the plaintiff and who is the defendant").

Accordingly, because American was the last of successive carriers under Sri Lankan air waybill number 603-2906-1292, only Met Logistics, as the "consignee who is entitled to delivery" under that air waybill, has standing to maintain an action against American. See Affirmation of Jodi S. Tesser, dated June 3, 2008, submitted in support of American's motion for summary judgment ("Tesser Aff."), Ex. 1.

Interestingly, plaintiff does not disagree that Article 30(3) provides that only the consignor or consignee may maintain an action against an air carrier in instances of successive carriage. Rather, plaintiff attempts to bypass Article 30(3) by relying on Commercial Union and the cases cited therein that look to Articles 12 through 15 of the Warsaw Convention to determine the issue of standing in support of its argument that "inasmuch as Kanan, the named plaintiff's assured, has standing to sue, having derived rights from the consignor and consignee, being the undisclosed principal of each who were acting as Kanan's agent," plaintiff, as subrogee of Kanan, has standing to sue American. See Plaintiff's Memorandum of Law in Opposition at pg. 8.[2]

---

[2] Articles 12, 13, 14, and 15 of the Warsaw Convention provide, in pertinent part:

### Article 12

1.  Subject to its liability to carry out all his obligations under the contract of transportation, the consignor shall have the right to dispose of the goods by withdrawing them at the airport of departure or destination, or by stopping them in the course of the journey on any landing, or by calling for them to be delivered at the place of destination, or in the course of the journey to a person other than the consignee named in the air waybill, or by requiring them to be returned to the airport of departure. He must not exercise this right of disposition in such a way as to prejudice the carrier or other consignors, and he must repay any expenses occasioned by the exercise of this right.

2.  If it is impossible to carry out the orders of the consignor the carrier must so inform him forthwith.

The cases cited by <u>Commercial Union</u> and relied upon by plaintiff are distinguishable from the facts here in that a number of those cases do not address standing in the instance of successive carriage under Article 30(3). Rather, these cases look to Articles 12 through 15 for guidance as to which parties have standing to sue in light of the fact that "[o]utside the context of successive carriage, the [Warsaw] Convention does not discuss which parties have standing for cases of damage to cargo." <u>Commercial Union</u>, 347 F.3d at 459; <u>see</u>, <u>e.g.</u>, <u>Brink's Ltd. v. South African Airways</u>, 93 F.3d 1022, 1025, n. 2 (2d Cir. 1996) (inferring standing for consignee based

---

3.    If the carrier obeys the orders of the consignor for the disposition of the goods without requiring the production of the part of the air waybill delivered to the latter, he will be liable, without prejudice to his right of recovery from the consignor, for any damage which may be caused thereby to any person who is lawfully in possession of that part of the air waybill.

4.    The right conferred on the consignor shall cease at the moment when that of the consignee begins in accordance with Article 13, below. Nevertheless, if the consignee declines to accept the waybill or the goods, or if he cannot be communicated with, the consignor shall resume his right of disposition.

### Article 13

1.    Except in the circumstances set out in the preceding Article, the consignee shall be entitled, on arrival of the goods at the place of destination, to require the carrier to hand over to him the air waybill and to deliver the goods to him, on payment of the charges due and on complying with the conditions of transportation set out in the air waybill.

2.    Unless it is otherwise agreed, it shall be the duty of the carrier to give notice to the consignee as soon as the goods arrive.

3.    If the carrier admits the loss of the goods, or if the goods have not arrived at the expiration of seven days after the date on which they ought to have arrived, the consignee shall be entitled to put into force against the carrier the rights which flow from the contract of transportation.

### Article 14

The consignor and the consignee can respectively enforce all the rights given them by Articles 12 and 13, each in his own name, whether he is acting in his own interest or in the interest of another, provided that he carries out the obligations imposed by the contract.

### Article 15

1.    Articles 12, 13 and 14 shall not affect either the relations of the consignor and the consignee with each other or the relations of relations of third parties whose rights are derived either from the consignor or from the consignee.

4

upon Article 13); <u>Bennett Importing v. Continental Airlines, Inc.</u>, No. 87 CV 29, 1998 WL 34031697 (D. Mass. Dec. 27, 1998) (stating that the owner of goods was permitted to sue in accordance with Article 14 if it proved it was an undisclosed principal of the consignor); <u>Leon Bernstein Commercial Corp. v. Pan Am. World Airways</u>, 72 A.D.2d 707, 421 N.Y.S.2d 587 (1st Dep't 1979) (allowing owner of goods to sue under Articles 14 and 15 if proven it was an undisclosed principal of the consignor); <u>But see Lufthansa German Airlines v. American Airlines</u>, 797 F. Supp. 446, 452-53 (D. V.I. 1992) (a successive carriage case; stating that based on Article 12 and 13, the consignors and consignees have a right of action, but when those Articles are read in conjunction with Articles 14 and 15, third parties are permitted to commence suit if it can be established that their rights are derivative of the consignor or the consignee).

The Second Circuit in the <u>Commercial Union</u> decision has established that the rules are different as to who has standing, depending upon whether a successive carriage situation exists. If the transportation does not involve successive carriage, then entities that derive their rights from either the consignor or the consignee have standing to sue. To the contrary, however, in instances such as this, where there is successive carriage, the Second Circuit, applying Article 30(3), has limited standing to the named consignor and/or the named consignee. If the rule regarding standing were the same for non-successive and successive carriage, there would be no reason for Article 30(3) to exist. To ignore Article 30(3) would be to improperly amend the Convention. <u>See Chan</u>, 490 U.S. at 134-35.

**B.    Plaintiff Has Failed to Provide Proof in Admissible Form That, As Subrogee of Kanan, It Has Derived Any Rights From the Consignor or The Consignee**

Assuming *arguendo*, that this Court were to find that Article 30(3) does not apply in this case to restrict standing to Met Logistics, the consignee entitled to delivery, it is respectfully submitted that plaintiff has failed to establish with evidence in admissible form that as an alleged

undisclosed principal, it derived any rights whatsoever from either the consignor or the consignee on the Sri Lankan air waybill.

Specifically, counsel for plaintiff has submitted an affirmation in his own name purporting to memorialize a telephone conversation with an employee of Kanan, who was allegedly involved in handling the logistics for the subject shipment, that discussed the relationship between Kanan, Expolanka and Met Logistics. See Krauzlis Aff. In particular, counsel states that an agency relationship exists between Kanan and Met Logistics inasmuch as the latter was the "receiving agent and customs broker for purposes of clearing the subject shipment upon its arrival in Chicago and for taking delivery of goods from American Airlines . . . ." See Krauzlis Aff. at ¶ 10. Moreover, counsel alleges that Kanan is an undisclosed principal of Expolanka, who was the freight forwarder retained to "make the necessary arrangements in taking delivery of the shipment" in Sri Lanka and "to also arrange for the carriage of the subject shipment from Colombo, Sri Lanka to Chicago, Illinois." Id. at ¶ 5. Plaintiff's conclusory and unsupported assertions of fact are insufficient to demonstrate that plaintiff actually derived any rights from either the consignor or the consignee on the Sri Lankan air waybill for purposes of establishing standing.

In Bennett Importing, plaintiff commenced suit against defendant for failing to timely deliver a shipment of goods to plaintiff or its agents. Specifically, Continental received, in Mexico, from Huaramex, S.A. as consignor, a shipment for delivery to John F. Kennedy International Airport in New York. The consignee under the air waybill was "Terra Is Incorporated." Upon arrival in New York, the shipment was placed in Continental's bonded cargo facility. A carrier's certificate to the Bureau of Customs was issued indicating Terra as consignee, Continental as the carrier, Alto Customhouse Brokers, Inc. ("Alto") as the broker and

Camel Trucking as the trucking company authorized to pick up the shipment. Shortly thereafter,

United States Customs issued an authorization for release of the goods to Alto. Plaintiff was also

listed on that document, but it is not clear as to whether plaintiff was listed as the consignee.

Bennett Importing, 1998 WL 34031697 at *1.

In determining whether plaintiff had standing to sue as an undisclosed principal under

Article 14 of the Warsaw Convention, the court stated that the burden of proving an agency

relationship was on the party seeking to establish that an agency relationship exists. Id. at *4.

The court noted that throughout plaintiff's submissions were references to both Terra and Alto as

"agents" for plaintiff, but that in plaintiff's statement of facts in its brief in opposition to

defendant's motion for summary judgment, Terra was referred to only as the consignor's freight

forwarder while Alto was referred to as plaintiff's agent. Id. In examining the evidence

submitted by the plaintiff, the court stated:

> Plaintiff's mere allegation that Terra is an agent of Bennett cannot support a ruling
> that Bennett was an undisclosed principal entitled to sue on the contract (Air
> Waybill). If it is Plaintiff's contention that Bennett is the undisclosed principal of
> Terra (the named consignee on the Air Waybill), it was incumbent upon plaintiff
> to provide the court with evidence of the alleged agency relationship . . . .
>
> It is well-settled that a person who contracts to perform an act for another, but
> who is not a fiduciary for the "other," is an independent contractor, not an agent.
> (Citations omitted). The distinction between an agent and an independent
> contractor is not a mere formality. The agency relationship carries with it duties,
> rights, and implications for third parties. For example, a principal may be subject
> to liability upon contracts made by an agent acting within the agent's authority.
> Thus, if Terra had violated the contract with Continental, Continental would have
> been entitled to sue Bennett as an undisclosed principal.
>
> Plaintiff, however, did not produce evidence sufficient to establish an agency
> relationship between itself and Terra. No evidence was produced, for example,
> with regard to how Terra was paid, what services Terra performed, or how Terra
> transferred title over the goods to Bennett. Moreover, plaintiff did not produce
> any affidavits from either Terra or Alto stating that they were acting as "agents"
> for Bennett, or that Bennett was suing on their behalf. In addition, Bennett has
> not made a claim that it was the intended beneficiary of the contract between

7

Huaramex, S.A. and Terra, or that it has rights that derive from the contract between Huaramex, S.A. and Terra.

Id. at * 5. The court found that plaintiff's evidence, which was limited to an affidavit on behalf of Bennett that stated "Bennett's agent, Terra Is Incorporate, a freight forwarder, coordinated the transportation of the merchandise from . . . Mexico to New York" and that plaintiff eventually received the goods shipped, supported a finding only that plaintiff was the party to whom the goods were to be delivered and not that Terra was Bennett's agent. Id.

In this case, similar to in Bennett, plaintiff has not provided sufficient evidence to support its assertion that either the consignor, Expolanka, or the consignee, Met Logistics, is an agent of Kanan. To begin with, counsel for plaintiff states in his affirmation that Expolanka is "an international air & sea freight forwarder" that was hired by Kanan to arrange the carriage of the subject shipment from Sri Lanka to Illinois. See Krauzlis Aff. at ¶¶ 5, 6, & 8. There is no reference in the affirmation of Expolanka as being an agent for Kanan or that Kanan was acting as an undisclosed principal of Expolanka in connection with the subject shipment. In its opposition memorandum of law, however, plaintiff states that Kanan is an undisclosed principal of Expolanka, who was acting as Kanan's agent. This supposed factual assertion is without a citation to any evidentiary support. See Plaintiff's Memorandum of Law in Opposition at pg. 8.

Moreover, plaintiff did not provide any affidavits from either Kanan, Expolanka or Met Logistics that stated that Expolanka and Met Logistics were acting as "agents" for Kanan or that Kanan was a third-party beneficiary of Expolanka and Met Logistics. Nor did plaintiff provide any documentation that evidenced an agency relationship between these entities, such as an agency agreement, or a document, such as an assignment, that demonstrated that Expolanka or Met Logistics transferred all of their rights in connection with the shipment to Kanan. Rather, counsel for plaintiff has merely produced his own affirmation purporting to memorialize a

8

conversation he had with someone from Kanan concerning the supposed relationship between the entities. See Krauzlis Aff. This evidence is not admissible to demonstrate that a triable issue of fact exists to defeat a motion for summary judgment. See Zuckerman v. City of New York, 49 N.Y.2d 557, 562-63, 427 N.Y.S.2d 595 (1980) (stating that a bare affirmation by an attorney that puts forth "mere conclusions, expressions of hope, or unsubstantiated allegations or assertions" is "without evidentiary value and thus unavailing" to successfully oppose a motion of summary judgment). Accordingly, the allegations with respect to the purported agency relationship between these entities, as well as any instructions supposedly given by Kanan to Expolanka or Met Logistics with respect to their duties and responsibilities that are discussed in the affirmation of counsel and repeated in the opposition memorandum should be disregarded as they are unsubstantiated with an affidavit from an individual from either Kanan, Expolanka or Met Logistics, or supported by documentary evidence.

In addition, plaintiff has not put forth any affidavit testimony or documentary evidence that purports to prove that American knew or should have known that Expolanka and Met Logistics were acting as agents of Kanan such that Kanan was the real party in interest in connection with the shipment. Indeed, Kanan does not appear anywhere on the Sri Lankan air waybill. Compare Parke, Davis & Co. v. British Overseas Airways Corp., 11 Misc.2d 811, 170 N.Y.S.2d 385 (City Ct. of N.Y. 1958) (indicating standing allowed if carrier had notice that an unnamed party to a contract was the true party in interest; the air waybill of the defendants identifies the plaintiff). Further, plaintiff has failed to produce any evidence of other prior dealings that could establish that American knew or should have known that Expolanka and Met Logistics were acting as Kanan's agent. See Bennett Importing, 1998 WL 34031697 at * 5.

9

Indeed, counsel for plaintiff's assertion that Expolanka and Met Logistics are agents of Kanan or that Kanan is an undisclosed principal of these entities does not make it so and cannot support such a finding. Rather, based upon the evidence presented by plaintiff, it appears that Expolanka and Met Logistics are nothing more than independent contractors, which were hired to make arrangements to transport the subject shipment from Colombo, Sri Lanka to Chicago, Illinois. Accordingly, plaintiff, as subrogee of Kanan, does not have the requisite standing to sue American.

## CONCLUSION

For the reasons stated in this memorandum of law, and the accompanying Affirmation of Jodi S. Tesser, it is respectfully submitted that plaintiff's Complaint be dismissed on the ground that plaintiff lacks standing to sue American, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
      July 2, 2008

Respectfully submitted,

MOUND COTTON WOLLAN
& GREENGRASS

By: _____
    Francis A. Montbach, Esq. (FAM 9631)
    Jodi S. Tesser, Esq. (JST 6398)
    One Battery Park Plaza
    New York, New York 10004
    (212) 804-4200

UNITED STATES DISTRICT COURT)

SOUTHERN DISTRICT OF NEW YORK)

<u>**AFFIDAVIT OF SERVICE**</u>

Sandra Neidich, being duly sworn, deposes and says:

That deponent is not a party to this action, is over the age of 18 years and resides in Monroe Township, New Jersey.

That on July 2, 2008, deponent served the within **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF AMERICAN AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT** upon:

James P. Krauzlis, Esq.
Badiak & Will, LLP
106 3rd Street
Mineola, New York 11501-4404

the addresses designated by said entities for that purpose by depositing the same enclosed in a first-class postpaid properly addressed wrapper to said entities at the above addresses in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

**SANDRA NEIDECH**

Sworn to before me this 2nd ·
day of July, 2008

**NOTARY PUBLIC**

CATHERINE RITZER
Notary Public, State of New York
No. 30-4744978
Qualified in Nassau County
Commission Expires September 30, 2009